Donald E. Haviland, Jr., Esquire (PA Id. No. 66616)
*haviland@havilandhughes.com*
**Haviland Hughes**
201 South Maple Way, Suite 110
Ambler, PA 19002
(215) 609-4661 Telephone
(215) 392-4400 Facsimile

*Counsel for Plaintiffs,*
 *Shawn and Karen McGlade,*
*and the Class of Wawa Employees*

| | |
|---|---|
| **SHAWN AND KAREN MCGLADE**, on behalf of themselves and all others similarly situated, | IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA |
| Plaintiffs, | CIVIL ACTION NO. _____ |
| v. | |
| **WAWA, INC.,** **WILD GOOSE HOLDING CO., INC.,** **RICHARD D. WOOD, JR.,** **CHRIS GHEYSENS,** **JOHN COLLIER,** **and** **DOE DEFENDANTS 1-10** | **JURY TRIAL DEMANDED** **CIVIL CLASS ACTION COMPLAINT** |
| Defendants. | |

1

## TABLE OF CONTENTS

*Page*

JURISDICTION AND VENUE ........................................................................................6

THE PARTIES...............................................................................................................7

  PLAINTIFFS.................................................................................................................7

  DEFENDANTS...........................................................................................................10

    *The Wawa Defendants*.............................................................................................10

    *The Doe Defendants* ...............................................................................................12

FACTUAL BACKGROUND.........................................................................................13

CLASS ACTION ALLEGATIONS ...............................................................................22

*Numerosity* ..................................................................................................................22

*Common Questions of Law and Fact*...........................................................................23

*Typicality*.....................................................................................................................25

*Adequacy of Representation* .......................................................................................26

*Superiority*...................................................................................................................26

COUNT I ......................................................................................................................27

VIOLATIONS OF THE PENNYSLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW ..............................................................................27

COUNT II .....................................................................................................................30

NEGLIGENCE .............................................................................................................30

COUNT III....................................................................................................................31

NEGLIGENCE *PER SE* ..............................................................................................31

COUNT IV.....................................................................................................................31

NEGLIGENT MISREPRESENTATION/FRAUD .........................................................31

COUNT V .....................................................................................................................36

UNJUST ENRICHMENT .............................................................................................36

COUNT VI.....................................................................................................................37

CONSPIRACY/CONCERT OF ACTION .....................................................................37

COUNT VII ...................................................................................................................38

FAIR LABOR STANDARDS ACT: UNPAID OVERTIME WAGES...............................38

COUNT VIII...................................................................................................................41

PENNSYLVANIA MINIMUM WAGE ACT: UNPAID OVERTIME WAGES ..................41

JURY DEMAND ..........................................................................................................43

Plaintiff Shawn McGlade, and his wife, Karen (the "McGlades" or "Plaintiffs"), on their own behalf and on behalf of the below-described Class of current and former employees of Defendant Wawa, Inc. ("Wawa"), and their spouses (the "Wawa Employee Class"), by and through their attorneys, hereby allege the following facts in support of their claims against the Defendants named in this case.

## INTRODUCTION

1.      Shawn McGlade was a model employee of Wawa for more than 5 years, entrusted with managing several Wawa stores in Pennsylvania in the course of his tenure, until his abrupt and inappropriate firing on January 3, 2020 in the wake of the public revelation by Wawa on December 19, 2019 that for more than 9 months prior Wawa had negligently allowed the McGlades' personal identifying and financial information ("PII"), including Shawn McGlade's social security number, to be accessed, manipulated and stolen without their knowledge or consent.

2.      Wawa fired Mr. McGlade in a sheepish effort to show that it was finally taking seriously the matter of cybersecurity, after having slept at the wheel for years, allowing cybercriminals to invade Wawa's computers and systems with reckless abandon last year.

3.      Mr. McGlade became a scapegoat, caught in the crossfire of company circling the wagons with its lawyers to try to contain the public relations nightmare that has become its announced data breach, one of the most sweeping and egregious data breaches of our time.  He is a victim of Wawa's willful incompetence and gross negligence in the stewardship of the PII of its most trusted employees and loyal customers.

4.      Instead of trying to catch and prosecute the cybercriminals who have inflicted serious financial and emotional harm upon Mr. McGlade and his family, and likely hundreds of

other Wawa employees and their families who are believed to have had their PII compromised by the data breach but have yet to be informed by Wawa of the compromise of their PII, Wawa chooses to police only its employees, treating them like criminals in a military state if they fail to follow Wawa's unwritten, but illegal, policies and procedures described more fully below.

5.     As a condition of his employment at Wawa, Mr. McGlade had to provide the Wawa Defendants with his confidential PII, including his name, the names of his wife and young children, their home address, and his social security number, among other important items of PII.

6.     Mr. McGlade entrusted this confidential information about himself and his family to Wawa's care, but Wawa betrayed that trust.

7.     As a result of that betrayal, Mr. McGlade and his family have suffered greatly, both financially and emotionally, for months.  The suffering continues to this day, as it has been only exacerbated by Wawa's improper firing of Mr. McGlade a week ago.

8.     The McGlades have suffered since early September of last year, trying to reverse wrongful and erroneous charges placed on new credit accounts opened using Shawn McGlade's PII.  Such charges, numbering in the thousands of dollars, were placed on these new credit accounts by unknown cybercriminals (named as "Doe Defendants" in this lawsuit) who were given access to Shawn McGlade's confidential information due to the gross negligence and blatant incompetence of the Wawa Defendants who failed to engage even the most basic cybersecurity protections, simply to try save money for the company.

9.     Cutting corners on cybersecurity is just one part of Wawa's unspoken credo to save money to make *more* money in fulfillment of its "Core Purpose" of having a "passion for winning" at all costs.  https://www.wawa.com/about.  That unspoken credo has turned Wawa into the multi-billion dollar it is today.

10.     As discussed more fully below, Wawa makes exorbitant profits at the expense of its hard working employees and unwittingly loyal customers.

11.     A company does not grow from a small mom-and-pop convenience store in Folsom Pennsylvania to a corporate behemoth of more than 850 stores operating in 7 states and generating $12 billion in annual revenue, without cutting a few corners, at the expense of its trusted employees and loyal customers.

12.     Trust and loyalty have price at Wawa, a price Wawa is <u>not</u> willing to pay.

13.     Instead, Wawa betrays the trust of its employees and the loyalty of its customers by willfully putting at risk of attack by cyberbcriminals their PII.  Wawa deliberately chose to maintain antiquated information technology systems, exposing its employees' PII and its customers' credit and debit card information to cyber attack.  Wawa does so in order to save the millions of dollars it would have had to spend to design and implement a modern cybersecurity program that complied with industry standards.

14.     Through this lawsuit, the thousands of affected Wawa employees have a voice in Shawn and Karen McGlade.  The McGlades are the much-needed "whistleblowers" in this fight against Wawa to expose its wrongdoing, beyond what Wawa has admitted publically to date. Through their brave decision to step forward and sue Wawa, where no active Wawa employee could reasonably be expected to do so, Wawa's unlawful, unfair and deceptive acts and practices, its violations of state and federal wage and hour laws, and its egregious, gross negligence in allowing cybercriminals to steal the PII of Wawa employees, will be brought to light and properly adjudicated in this Court of law.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiffs and members of the Wawa Employee Class (defined below) are of diverse citizenship from the Defendants and over two-thirds of the Class resides outside of Pennsylvania.

16.     According to Wawa, more than 30,000 employees are located in at least the seven states in which Wawa operates, and perhaps neighboring states.  Given the unfettered access to Wawa's computer systems cybercriminals enjoyed for the better part of last year, it is believed and therefore averred that the  PII of these many employees was exposed, accessed and stolen.

17.     Thus, the aggregate amount in controversy exceeds $5,000,000.

18.     This Court has personal jurisdiction over the parties because the Wawa Defendants (described below) are located in Pennsylvania.

19.     The Wawa corporate Defendants, Wawa, Inc. and Wild Goose Holding Company, are Pennsylvania citizens, are registered to do business in Pennsylvania and conduct substantial business in Pennsylvania, have had systematic and continuous contacts within this State, and have agents and representatives that can be found in this State.

20.     The Wawa individual Defendants, Messrs.Wood, Gheysens and Collier, are believed and therefore averred to work in Pennsylvania at Wawa headquarters, and have had sufficient minimum contacts with and/or have purposefully availed themselves of the laws and markets of the Commonwealth of Pennsylvania.

21.     Under 28 U.S.C. § 1391, venue is proper in this District because all Defendants engaged in substantial conduct relevant to the claims Plaintiffs and the Class, and caused harm to members of the Wawa Employee Class in this District.

## THE PARTIES

### PLAINTIFF

22.     Plaintiff, Shawn McGlade is a citizen and resident of Pennsylvania.  Mr. McGlade was employed as a General Manager ("GM") of Wawa in 2019 in charge of one of the 850 Wawa stores.  He has been a Wawa GM since March 2017.  He was hired by Wawa over 5 years ago, and worked his way up through the Wawa ranks to the level of "Assistant General Manager" ("AGM"), in which role he served between September 2014 until March 2017, when he was promoted to GM.  As a condition of his employment by Wawa, Mr. McGlade was required to provide his PII, including his social security number, home address, and the names of his wife and minor children, among other items of confidential PII.

23.     As a Wawa GM, Mr. McGlade was paid a salary and substantial benefits, including bonuses, profit sharing, 401k matching funds, and healthcare benefits, among others.

24.     Plaintiff Karen McGlade is the wife a citizen and resident of Pennsylvania.  As a result of the theft of Mr. McGlade's social security number, along with other PII being to the McGlades, Mrs. McGlade has been harmed, including but not limited to the drop in Mr. McGlade's credit score, which prevented the couple from obtaining a much-needed refinance of their home mortgage at a lower rate.  Mrs. McGlade has spent substantial time and effort trying to cancel the new credit accounts opened in Mr. McGlade's name, avoid the obligation to pay credit balances for purchases not made by the, cancelling a Verizon phone account wrongfully opened in her husband's names, and trying to restore the couple's credit.

25.     In September of 2019, the McGlades discovered that their confidential PII had been compromised.  Someone other than Mr. McGlade had opened a card with the national

retailer, Nordstrom, in Mr. McGlade's name, using the social security number he had entrusted only to Wawa, and had charged thousands of dollars in purchases.

26.     Then, the McGlades learned that someone other than Mr. McGlade had opened a credit account with an entity known as E-commodity (believed to be a bank in Pittsburgh Pennsylvania), in Mr. McGlade's name, using the social security number he had entrusted only to Wawa, and  sought to bill unauthorized charges to that account.

27.     Then, the McGlades learned that someone other than Mr. McGlade had opened a cellular telephone service account with Verizon in Mr. McGlade's name, using the social security number he had entrusted only to Wawa, and ran up hundreds of dollars in services fees and other charges on that account.

28.     The McGlades are aware of other instances that someone other than Mr. McGlade has opened, or has attempted to open, additional credit accounts in Mr. McGlade's name, using his PII entrusted to Wawa.  However, because the McGlades' investigation of these additional instances of identity theft is ongoing, the Plaintiffs will seasonably supplement their factual allegations as needed as more information becomes available to them.

29.     At no time has any Wawa Defendant advised Mr. or Mrs. McGlade that their PII has been compromised due to the breach of data security at Wawa, which started sometime in March 2019.  To the contrary, as discussed more fully below, Mr. McGlade was intentionally deceived by Wawa senior management, including the Wawa Individual Defendants, about what was happening to his PII for months.  Specifically, despite the fact that Wawa senior management, including Messrs. Wood, Gheysens and Collier, all knew that the Wawa computer systems had been invaded by cybercriminals prior thereto, Mr. McGlade was ordered to go to his store on his day off, December 19, 2019 – the same day as Defendant Gehysens was announcing

8

to the world the data breach of Wawa's computer systems – only sit stand idly by for hours waiting for further direction from the Wawa Defendants, which direction never came.

30.     On December 19, 2019, neither Mr. McGlade nor any of the other Wawa GMs were advised that *their* employee PII had been compromised, and that the Wawa computer systems were invaded by cybercriminals who had access to *their* employee PII. Instead, Defendant Gheysens, believed to be with the knowledge, approval and consent of Defendants Wood (the Board Chairman) and Collier (the CIO), willfully misrepresented the nature and scope of the data breach as being limited only to consumer credit card information due to malware, and willfully deceived Wawa employees that they had nothing to worry about as it concerned their employee PII in the care of Wawa. That deception allowed the loss of Wawa employee PII to continue unabated, and caused continuing harm to the McGlades, including the drop in Mr. McGlade's credit score.

31.     As discussed throughout this Complaint, the McGlades have suffered direct injury and damages as a result of the data breach and compromise of their PII due to the gross negligence of Wawa Defendants, and the willful conduct of the Doe Defendants. Plaintiffs seek declaratory and injunctive relief to stop the harm, damages to compensate them and others in the Wawa Employee Class for such harm, as well as statutory damages, fees and costs. In order to try to minimize their harm, the McGlades has signed up for credit monitoring with Experian and expect to press both Experian and Wawa for reimbursement of the economic losses, including reimbursement of their time spent in trying to repair their credit as well as their attorney's fees and costs being incurred to assist them in addressing Wawa's breach of security and compromise of their PII.

## DEFENDANTS

### *The Wawa Defendants*

32.     Wawa, Inc. is a corporation, organized and existing under the laws of New Jersey, with its corporate headquarters at 260 West Baltimore Pike, Wawa, Pennsylvania.

33.     Wild Goose Holding Co. ("Wild Goose") is a corporation, organized and existing under the laws of Delaware with its corporate headquarters at 1105 North Market Street, Suite 1300, Wilmington, Delaware.

34.     Upon information and belief, Wild Goose owns Wawa, Inc.  Accordingly, Defendants Wawa, Inc. and Wild Goose Holding Co. are collectively referred to as "Wawa" or the "Wawa Corporate Defendants".

35.     Wawa is one of the largest privately owned companies in America. It began in 1803 as an iron foundry in New Jersey.  Toward the end of the 19th Century, owner George Wood took an interest in dairy farming and the family began a small processing plant in Wawa, Pennsylvania.  As home delivery of milk declined in the early 1960s, Grahame Wood, George's grandson, opened the first Wawa Food Market in 1964 as an outlet for dairy products

36.     Today, Wawa operates a chain of convenience retail stores.  Wawa does business under the name "Wawa" and operates 850 stores located in Pennsylvania, New Jersey, Delaware, Maryland, Virginia, Florida and Washington.

37.     In 2015, Wawa was ranked 34th on the Forbes Magazine list of the largest private companies.  By 2019, it had moved up to the rank of 25, with over $12 billion in annual revenue and 34,000 employees.

38.     Richard D. Wood, Jr. is the former Chief Executive Officer ("CEO") of Wawa, and the first cousin, once-removed of Grahame Wood.  He currently serves as the Chairman of

the Board of Wawa.  It is believed and therefore averred that Mr. Wood is a resident of Pennsylvania, who works in Pennsylvania.  As the Chairman of Wawa's Board, Mr. Wood was responsible for ensuring that Wawa senior management, including Messrs. Gheysens and Collier, implemented appropriate cybersecurity to protect the PII of the McGlades and the Wawa Employee Class.  Mr. Wood failed to do so, and thus breached his duty of care to the McGlades and other members of the Wawa Employee Class.

39.    Chris Gheysens is the current CEO of Wawa.  It is believed and therefore averred that Mr. Gheysens is a resident of Pennsylvania, who works in Pennsylvania.  As the CEO of Wawa, Mr. Gheysens was responsible for ensuring that Wawa, including its CIO Mr. Collier, implemented appropriate cybersecurity to protect the PII of the McGlades and the Wawa Employee Class.  Mr. Gheysens failed to do so, and thus breached his duty of care to the McGlades and other members of the Wawa Employee Class.  Mr. Gheysens also committed multiple misrepresentations and deception of the McGlades and members of the Wawa Employee Class by intentionally underreporting the nature and scope of the data breach on December 19, 2019, in order to deceive the McGlades and the members of the Wawa Employee Class about the fact that their employee PII had been compromised and to induce them to rely on his statements to their detriment, which they did and continue to do to this day.

40.    Chris Collier is the current Chief Information Officer ("CIO") of Wawa, having served in that role for a number of years.  It is believed and therefore averred that Mr. Collier is a resident of Pennsylvania, who works in Pennsylvania.  As the senior officer in charge of Wawa computer systems, Mr. Collier was responsible for protecting the PII of the McGlades and the Wawa Employee Class, and failed to do so, and thus breached his duty of care to the McGlades and other members of the Wawa Employee Class..

41.     Messrs. Wood, Gheysens and Collier are all collectively referred to as the "Wawa Individual Defendants".  The Wawa Corporate Defendants (or Wawa) and the Wawa Individual Defendants are collectively referred as the Wawa Defendants.

### *The Doe Defendants*

42.     Doe Defendants 1-10 (collectively "the Doe Defendants") are persons and entities who unlawfully accessed and received the PII of Plaintiffs and the Class.  Whether their actions are ultimately deemed criminal or not is of no moment to the claims of the McGlades and the Wawa Employee Class.  They suffered as a result of the compromise of the employee PII in the hands of Wawa, which the Doe Defendants accessed and used.

43.     The identities of the Doe Defendants are not yet known, but may be known in the future once the investigation of others is complete.  Plaintiffs anticipate that discovery will permit them to identify and therefore specifically name the Doe Defendants in this lawsuit.

44.     All the foregoing Defendants are collectively referred to herein as "Defendants", where appropriate.

45.     The acts alleged in this Complaint to have been done by Wawa were authorized, ordered, done and/or ratified by the company's respective officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of their respective business affairs.

46.     Various persons and/or firms not named as Defendants herein, have participated as co-conspirators in the violations alleged herein and have performed acts and made statements or omissions in furtherance thereof.

## FACTUAL BACKGROUND

47.     Wawa's "Core Purpose" claims to "value people", to "do the right thing" and to "do things right". However, Wawa chose to sacrifice each of these values in favor of another "Core Purpose": "passion for winning" at all costs.  https://www.wawa.com/about

48.     "Winning" has cost Mr. McGlade his job, and has caused the McGlades to suffer the most egregious identity theft of any reported to date.  Nowhere is this demonstrated more clearly than in how Wawa has handled the data breach.

49.     Wawa, and the Wawa Individual Defendants, have intentionally misrepresented the nature and scope of the breach of Wawa's computer systems, and the fact that Wawa employee PII has been compromised.  They willfully delayed making such report – as required by law – and then lied about when they knew and what they knew.

50.     By their misrepresentations and omissions, the Wawa Defendants deceived the McGlades and the members of the Wawa Employee Class in order to induce them to sleep on their rights and not take appropriate measures to protect themselves and their families.  Wawa's coverup is shameful.

51.     As a result of Wawa's neglect, new credit accounts have been opened in Shawn McGlade's name, using the McGlades' home address as the billing address, by unknown persons who used the McGlades' confidential PII Wawa was entrusted to secure.  Thousands of dollars were billed to these accounts, and the bills were sent to the McGlades' home for payment.

52.     As a result of Wawa's neglect, a new Verizon phone service account was opened in Shawn McGlade's name, again using the McGlades' home address as the billing address, by unknown persons who used the McGlades' confidential PII Wawa was entrusted to secure.

Hundreds of dollars in phone and data charges were billed to this account, and the bills were sent to the McGlades' home for payment.

53.    As a result of these actions by cybercriminals, named as Doe Defendants in this lawsuit, and due to the inactions and negligence of Wawa and the Wawa Individual Defendants, the McGlades' credit has been destroyed.  The McGlades' request to refinance the high interest mortgage they obtained for the home they recently purchased for their 2 young children (with a 3rd on the way) was denied due to the reduction in Shawn's credit score, due in large part to the high number of credit inquiries and newly opened credit accounts with unpaid balances, all of which were caused by the theft of the McGlades' PII negligently maintained by Wawa.

54.    The McGlades have had to struggle and battle for months trying to avoid these wrongful charges, to cancel these wrongful accounts, and to convince these various vendors and creditors that the "Shawn McGlade" who opened these accounts and incurred these charges is not the *real* Shawn McGlade.  But, how do you convince an anonymous customer service representative on the other end of a telephone line that you are the real Shawn McGlade and that an imposter was the culprit?  You struggle, you claw, and you fight.  But, you fight alone, because the real culprit has chosen to remain stays silent.

55.    Wawa stayed silent for weeks, if not months.

56.    Plaintiffs' investigation has revealed that the Wawa Defendants knew long before they chose to have Defendant CEO Chris Gheysens write an open letter to the public on December 19, 2019 finally admitting that Wawa had allowed cybercriminals to infiltrate its server and computer systems.

57.    The Wawa Defendants knew prior to December 3, 2019 – 16 days earlier – when it posted a job opening looking for an "incident response associate" to help with "detection,

14

response and remediation of cyber related attacks on the Wawa enterprise." An "incident response associate" is needed when a company has need of someone to "respond" to and "remediate" a "cyber related attack on the Wawa enterprise."

58.     But, the Wawa Defendants likely knew, or should have known, that it was experiencing a "cyber related attack on the Wawa enterprise" in mid-November 2019, when Visa, one Wawa's largest financial services vendors and partners with whom it has a direct contractual relationship and direct reporting obligations, reported that gas stations, like those maintained by Wawa stores, had emerged as attractive targets for cybercriminals because many have been slow to adopt more-secure payment-processing technology, such as chip readers as opposed to magnetic-stripe readers to accept credit and debit card payments.

59.     Specifically, Visa advised that during the summer of the 2019 criminals used malware in two data breaches at North American gas stations and that their retail partners, like Wawa, needed to take appropriate steps to protect themselves, their employees and their customers, and the PII in their care, custody and control.

60.     So what did Wawa do: nothing. It decided that it was too costly to implement the cybersecurity protections called for by Visa's warning. So it maintained the status quo.

61.     Worse, it created an information vacuum, with the Wawa Defendants willfully and egregiously withholding important information from Wawa employees about the threat to its computer systems, which had already been compromised and had already been causing the McGlades to suffer identity theft. Had Wawa taken appropriate steps at the appropriate time, the McGlades' PII would not have stolen and used against them. The PII of the Wawa Employee Class would not have been compromised.

62.     The McGlade's credit accounts have been overrun; they have been under financial siege for months by unknown cybercriminals (the Doe Defendants), as they were struggling to refinance their home mortgage.  The stress and strain it has placed on their young family has been almost unbearable.

63.     Because the Wawa Defendants refused to tell the truth about what they knew, and when they knew it, the McGlades were left to blame each other and others for presumed failings on their part.  But the McGlades did nothing wrong: the Wawa Defendants caused their problems.  They have failed to admit the same to the McGlades and the 34,000 other Wawa employees to this day.

64.     Because the Wawa Defendants required Mr. McGlade and other Wawa employees to provide them their PII as a condition of their employment at Wawa, the Wawa Defendants had a legal duty to protect the private, highly sensitive, and confidential PII of the McGlades and the members of the Wawa Employee Class.  The legal duty has been made clear by the Pennsylvania Supreme Court.

65.     The Wawa Defendants failed to safeguard and prevent the theft of this PII from its computers or network.  They failed to take reasonable precautions to protect the PII of Plaintiffs and the Class, and otherwise failed to act reasonably in fulfillment of their duty to current and former employees.

### The Wawa Data Breach and Coverup

66.     In early March 2019, the Doe Defendants accessed Wawa's computer systems and installed malware in order to attack Wawa's point-of-sale ("POS") payment systems. According to Wawa, every POS system in the 850 Wawa stores was affected in some way.

67.    The Doe Defendants maintained access to the Wawa computer systems for the period of at least March 4, 2019 through December 10, 2019, when Wawa concedes it became aware of the intrusion.

68.    However, based on the facts set forth herein, it is believed and therefore averred that the Wawa Defendants knew weeks, or months, before about the intrusion, but failed to admit the same, either publically or privately to Wawa employees and customers.

69.    Wawa admits that the Doe Defendants stole payment card data of a number of customers of Wawa.  The exact number of customers is not yet known.

70.    Wawa has failed to admit that the Doe Defendants also accessed and stole the PII of Wawa employees, like Mr. McGlade.  The exact number of Wawa employees is not yet known, but is believed to number in the thousands.

71.    The breach of Wawa's computer systems, and the compromise of its employee PII and customer payment card data was the direct and proximate result of Wawa's inadequate security measures.

72.    For years, Wawa has refused to implement even the most basis, industry-standard cybersecurity systems, software, procedures and best practices, as set forth in the below guides.

73.    As a result, the McGlades and other members of the Wawa Employee Class have suffered from the unauthorized access to their employee PII, as well as their payment card information, by the Doe Defendants.  In the case of the McGlades and likely others, they have suffered from the theft and use of their PII, which has caused their identities to be stolen, a great personal and financial harm to them.  As a result, the McGlades and members of the Wawa Employee Class have suffered, and will continue to suffer damages from the loss of access to and use of the existing credit, the compromise and use of such existing credit, the unauthorized

17

opening of new credit accounts and use of such new credit, and the opening of other accounts, such as the Verizone telephone account opened in Mr. McGlade's name.  There is also the very real potential for the Doe Defendants to file false tax returns this year (as typically happens in such cases) to collect refunds for the tax year 2019, which refunds belong to members of the Wawa Employee Class.

### The Wawa Defendants Knew or Should Have Known About the Problems of Identity Theft and Fraud Long Before the Data Breach Occurred.

74.     The 2013 Identity Fraud Report released by Javelin Strategy & Research states that in 2012 identity fraud incidents increased by more than one million victims and fraudsters stole nearly $21 billion. The study identified 12.6 million victims of identity fraud in the United States in the past year, which equates to 1 victim every 3 seconds. The report concluded that nearly 1 in 4 data breach letter recipients became a victim of identity fraud, with breaches involving Social Security numbers to be the most damaging.

75.     In 1992, the Organization for Economic Co-operation and Development ("OECD"), an international treaty organization to which the United States became a signatory in 1961, promulgated a framework for corporations and governments to secure their computers and networks.  This framework included the following broad principles:

a.      Accountability: The responsibilities and accountability of owners, providers and users of information systems and other parties concerned with the security of information systems should be explicit.

b.      Awareness: In order to foster confidence in information systems, owners, providers and users of information systems and other parties should readily be able, consistent with maintaining security, to gain appropriate knowledge of and be informed about the existence and general extent of measures, practices and procedures for the

security of information systems.

      c.      Ethics: Information systems and the security of information systems should be provided and used in such a manner that the rights and legitimate interests of others are respected.

      d.      Multidisciplinary: Measures, practices and procedures for the security of information systems should take account of and address all relevant considerations and viewpoints, including technical, administrative, organizational, operational, commercial, educational and legal.

      e.      Proportionality: Security levels, costs, measures, practices and procedures should be appropriate and proportionate to the value of and degree of reliance on the information systems and **to the severity, probability and extent of potential harm**, as the requirements for security vary depending upon the particular information systems.

      f.      Integration: Measures, practices and procedures for the security of information systems should be coordinated and integrated with each other and with other measures, practices and procedures of the organization so as to create a coherent system of security.

      g.      Timeliness: The security of information systems should be reassessed periodically, as information systems and the requirements for their security vary over time.

      h.      Democracy: The security of information systems should be compatible with the legitimate use and flow of data and information in a democratic society.

76.      Based on the OECD's framework, in 1996, the Department of Commerce's National Institute of Standards and Technology ("NIST") issued its own set of "Generally

Accepted Principles and Practices for Securing Information Technology Systems". As described by NIST, certain generally accepted practices include:

    a.   Assessment of Risk and Risk Mitigation, including:

        i.   The identification of appropriate safeguards as a primary function of computer security risk management.

        ii.   The effective implementation of safeguards. Including the periodic assessment and improvement of safeguards and the reanalysis of risk.

    b.   The use of mechanisms to detect unauthorized and/or illegal activity.

77.     In addition, to assist companies in protecting the security of sensitive personal and financial information, the United States Federal Trade Commission ("FTC") has issued a publication entitled "Protecting Personal Information: A Guide for Business" (the "FTC Report"). In this publication, the FTC provides guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identity theft.

78.     To protect the personal sensitive information in their files, the FTC Report instructs businesses to follow the following guidelines:

    a.   Keep inventory of all computers and laptops where the company stores sensitive data;

    b.   Do not collect personal information if there is no legitimate business need. If there is a legitimate business need, only keep the information as long as necessary;

    c.   Use social security numbers only for required and lawful purposes and do not store these numbers unnecessarily, such as for an employee or customer identification number;

    d.   Encrypt the personal information, particularly if the sensitive information is

shipped to outside carriers or contractors. In addition, the business should keep an
inventory of all the information it ships;

    e.   Do not store sensitive computer data on any computer with an Internet connection
or access unless it is essential for conducting the business;

    f.   Control access to sensitive information by requiring that employees use "strong"
passwords; and

    g.   Implement information disposal practices that are reasonable and appropriate to
prevent unauthorized access to personally identifying information.

79.    The Wawa Defendants violated both international and federal guidelines, which
have been in place for decades. In so doing, they did not meet minimum data security industry
standards for reasonable business practices, thereby failing to ensure adequate security of the
Plaintiffs' and the Class' PII and by failing to retain this PII in a secure and safe manner.

80.    As a direct and proximate result of the Wawa Defendants' actions and failures to
act in maintaining reasonable and adequate security procedures to protect against the theft of
Plaintiffs' and the Class' PII, Plaintiffs and the Class have suffered actual harm and damages,
including statutory damages, in that the personal and financial information of Plaintiffs and the
members of the Class have been misappropriated, accesses and used improperly without consent,
to purchase goods and services, to expend bank funds and to do other acts described herein.
Because of this misappropriation, Plaintiffs and the Class have suffered significant economic
harm, in the form of lost monies, lost time, lost resources, reductions in their credit scores, and
negative impact in their ability to obtain credit.

81.    The Wawa Defendants' failure to maintain reasonable and adequate security
procedures to protect against the theft of Plaintiffs' and the Class' PII has also put members of

the Class at an increased and imminent risk of becoming victims of identity theft crimes, fraud and abuse in the future. In the case of the McGlades and other members of the Wawa Employee Class, that risk has been realized and remains outstanding to this day.

82.     Plaintiffs and members of the Wawa Employee Class have spent, or will need to spend, considerable time, effort and money seeking to protect themselves and restore their identities and credit as a result of the Defendants' conduct.

83.     Plaintiffs and the Class are unable to obtain appropriate complete relief from the Defendant, and thus come before this Court for a reasonable remedy.

## **CLASS ACTION ALLEGATIONS**

84.     Plaintiffs seek to bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other current and former employees of Wawa, and their spouses, similarly situated in Pennsylvania and other states in which they reside, as members of the following proposed Wawa Employee Class:

> All current and former employees of Wawa, and their spouses in Pennsylvania and other states in which they reside, who, during the period beginning in at least March 2019 and continuing through the present had their PII accessed, disseminated and/or used by unauthorized users as a result of the breach of Wawa's computer systems. Excluded from the Class are Defendants, any entity in which a Defendant has a controlling interest, and their legal representatives, heirs, successors, and any governmental entities.

### *Numerosity*

85.     The proposed Class is so numerous that joinder of all of its members is impractical. There are at least 34,000 current Wawa employees, and thousands of other former employees, for whom Wawa maintained their PII on Wawa computer systems. These current and former employees of Wawa, and their spouses, suffered from the compromise of the Wawa computers by the Doe Defendants, and the actual or potential loss of their PII due to the actions and failures of the Defendants to act.

22

## *Common Questions of Law and Fact*

86.    There are multiple issues of law and fact in this case against the Wawa

Defendants that are common to the Wawa Employee Class, including the following:

    a.   Whether the Wawa Defendants received and stored PII of Plaintiffs and members

       of the Class;

    b.   Whether the Wawa Defendants had a duty to act reasonably in protecting the PII

       of Plaintiffs and the Class in their care, custody and control;

    c.   Whether the Wawa Defendants failed to act reasonably in protecting the PII of

       Plaintiffs and the Class in their care, custody and control;

    d.   Whether the actions and/or failures to act of the Wawa Defendants caused the PII

       of Plaintiffs and the Class to be accessed, stolen and used without authorization;

    e.   Whether the Wawa Defendants failed to timely and reasonably notify Plaintiff

       and the Class of the theft of their PII in conformity with the laws of Pennsylvania

       and other states;

    f.   Whether the Wawa Defendants' notification contained false, misleading or

       deceptive information and/or failed to inform Plaintiff and the Class of material

       information necessary to allow Plaintiffs and the Class to protect themselves from

       further harm due to the theft of their PII;

    g.   Whether the Wawa Defendants have been unjustly enriched by having obtained

       the labor and other benefits from services of Plaintiffs and the Class, and the

       saving of costs that would have been expended had they acted reasonably to

       protect the PII in their care, custody and control;

h.  Whether the Wawa Defendants engaged in a conspiracy and/or concerted conduct in deceiving Plaintiffs and the Class and concealing the truth about data breach affecting the PII of Plaintiffs and the Class;

i.  Whether the Wawa Defendants complied with the security notification laws of Pennsylvania and other States upon learning of the breach of the PII of Plaintiffs and the Class;

j.  Whether the Wawa Defendants violated the consumer protection laws of Pennsylvania and other states through their acts and omissions set forth in this Complaint;

k.  Whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief as to Defendants' conduct;

l.  Whether Plaintiffs and the members of the Class are entitled to damages, and, if so, the nature of such damages;

m.  Whether Plaintiffs and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

87.    There are also multiple common issues of law and fact in this case against the Doe Defendants, including the following:

a.  Whether the Doe Defendants received, stored and used the PII of Plaintiffs and members of the Class;

b.  Whether the Doe Defendants had a duty to act reasonably in protecting the PII of Plaintiffs and the Class in their care, custody and control;

24

c.  Whether the Doe Defendants failed to act reasonably in protecting the PII of Plaintiffs and the Class in their care, custody and control;

d.  Whether the actions and/or failures to act of the Doe Defendants caused the PII of Plaintiffs and the Class to be accessed, stolen and used without authorization;

e.  Whether the Doe Defendants have been unjustly enriched by having obtained and utilized the PII of Plaintiffs and the Class;

f.  Whether the Doe Defendants violated the consumer protection laws of Pennsylvania and other states through their acts and omissions set forth in this Complaint;

g.  Whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief as to Doe Defendants' conduct;

h.  Whether Plaintiff sand the members of the Class are entitled to damages, and, if so, the nature of such damages;

i.  Whether Plaintiffs and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

*Typicality*

88.     Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and the members of the Wawa Employee Class sustained injuries as a result of the unlawful compromise and disclosure of their PII, which injuries were directly and proximately caused by the Defendants' acts and omissions.  As detailed herein, Plaintiffs' harm consisted of the actual theft of their identity by the use of their PII by unauthorized persons, which caused Mr.

25

McGlade's credit to be adversely affected, and employment and credit status to be impacted negatively.

### Adequacy of Representation

89.     Plaintiffs can and will fairly and adequately represent and protect the interests of the Class, and Plaintiffs have no interests that conflict with or are antagonistic to the interests of the members of the Class.  Plaintiffs have retained attorneys competent and experienced in class actions, including consumer fraud class actions involving theft of identify.  No conflict exists between Plaintiffs and the members of the Class.

### Superiority

90.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

91.     The prosecution of separate actions by individual members of the plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class.  These adjudications would establish incompatible standards of conduct for the Defendants which would, as a practical matter, be disparities of the claims of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

92.     The Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

93.     Accordingly, class certification is appropriate under Rule 23(b)(1)(A), 23(b)(1)(B), 23 (b)(2) and 23(b)(3).

## COUNT I
## VIOLATIONS OF THE PENNYSLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## THE WAWA DEFENDANTS

94.     Plaintiffs and the Class hereby incorporate by reference thereto the foregoing and following paragraphs hereof as if fully set forth herein.

95.     In order to be employed by the Wawa Defendants, the Plaintiffs and the Class were required to their PII.

96.     This PII included, but was not limited to, their social security numbers, names, names of their spouses and children, home addresses, telephone numbers, and other confidential information.

97.     On information and belief, the aforementioned PII was stored by the Wawa Defendants on their computer network, or individual computers within the possession and control of the Wawa Defendants and their employees.

98.     Long after former employees ended their employment relationship with the Wawa Defendants, on information and belief, the Wawa Defendants maintained this personal information without need and/or permission.  On information and belief, the Wawa Defendants maintained this information knowing that they had no lawful reason and/or need to retain or use the PII of such members of the Class.

99.     On information and belief, the Wawa Defendants maintained such employee PII in an unsecure manner, failing to take appropriate steps to secure such PII using appropriate cybersecurity protections.

100.    By knowingly retaining the PII information in an unsecured manner, the Wawa Defendants allowed such PII to access and disclosed to the Doe Defendants, who obtained this information by accessing the unsecured computers of the Wawa Defendants.

101.    The Doe Defendants accessed the employee PII contained therein without any lawful purpose or privilege to do so.  Chiefly, the Doe Defendants obtained the employee PII of the Plaintiffs and the Class in order to steal their identities and commit unlawful acts.

102.    Despite these clear facts, the Wawa Defendants willfully misrepresented these facts to Mr. McGlade and other Wawa employees, and intentionally concealed all the material facts about the data breach, including the fact that Wawa employee PII had been compromised.

103.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§201, et seq. ("UTPCPL") makes unlawful any "unfair methods of competition" and "unfair or deceptive acts or practices", including the following, among others:

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

104.    The unfair methods of competition, and unfair or deceptive acts or practices, in the conduct of any trade or commerce as defined above are declared unlawful under the UTPCPL.

88.    The Wawa Defendants engaged in the following unfair and deceptive acts or practices, which violate the aforesaid provisions of the UTPCPL, either directly by their own acts and/or omissions, or by their authorization, express or implied, to others to engage in such unfair and deceptive acts:

> a.    Defendants intentionally misled and deceived Mr. McGlade and other members of the Wawa Employee Class about the timing, nature and scope of the breach of the Wawa computer systems, by their direct misstatements on December 19, 2019 and by the willful omissions both before and after;
>
> b.    The Wawa Defendants conspired and agreed with each to have Defendant Gheysens make the statements he did on December 19, 2019, and to withhold material information from Wawa employees about the scope of the data breach and the fact that employee PII had been compromised.

28

       c.     The Wawa Defendants' acts or practices, including the failures to act and to speak the truth in the face of false, misleading and deceptive statements about the timing, nature and scope of the data breach, constitute "other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, in violation of sub-section (xxi).

89.     The UTPCPL authorizes any person, including natural persons, corporations, trusts, partnerships, incorporated and unincorporated associations, and any other legal entities to seek an injunction, damages, costs, and reasonable attorneys fees to prevent and ameliorate the anticompetitive conducted described herein.

90.     Mr. McGlade is a person pursuant to the UTPCPL. Mr. McGlade has been injured as a result of the Wawa Defendants' conduct in violation of Pennsylvania law, and hereby seeks damages.

91.     The acts and practices described herein demonstrate that the Wawa Defendants acted unlawfully within the meaning of the UTPCPL such that Mr. McGlade may be awarded up to three times his actual damages sustained, and such additional relief as deemed necessary or proper. These damages consist of, *inter alia*, his unpaid wages and benefits due to the Wawa Corporate Defendants' willful deception as to the compromise of the Wawa computer systems by the Doe Defendants. Had Mr. McGlade known about such compromise, he never would have accessed the Wawa computer system in the manner he did, leading to his abrupt and inappropriate dismissal.

92.     Mr. McGlade seeks relief the Wawa Defendants for their unfair and deceptive conduct which allowed these Defendants to avoid detection of the compromise and loss of employee PII.

93.     Mr. McGlade and members of the Wawa Employee Class have been injured as a direct result of the Defendants' conduct in violation of the UTPCPL sections above, and hereby

seeks damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

**COUNT II**
**NEGLIGENCE**
**THE WAWA DEFENDANTS**

105.　Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

106.　The Wawa Defendants owed, and continue to owe, a duty of care to Plaintiffs and the Class to do all of the following: (1) ensure that employee PII was secure; (2) ensure that employee PII was not compromised, or accessed by anyone for an improper purpose without consent by Plaintiffs and the Class, and (3) was used for improper purposes.  This duty of care also included a duty of reasonable care in safeguarding employee PII and discovering any breach in a timely manner, and then timely reporting such breach to affected employees.

107.　The Wawa Defendants breached their duty of care to Plaintiffs and the Class by failing to provide adequate protections to the PII and by allowing the PII to be accessed by third parties, including the Doe Defendants.  They breached their duty of care by failing to timely discover the breach of employee PII and failing to timely report such breach to affected employees, like the McGlades.

108.　As a direct and proximate result of the Defendants' actions alleged above, the Plaintiffs and the Class suffered damages, including the loss of time and money (including out of pocket expenditures, as well as the loss of money in the future from the denial of a mortgage refinance at a lower rate of interest, the loss and value of time spent in seeking to resolve the problems caused by the theft of the McGlades' identity, and the loss of credit, including a drop in Shawn McGlade's credit score.

109.    In breaching their duty to Plaintiffs and the Class, the Wawa Defendants acted wantonly, recklessly and with utter disregard for the impact of their negligent conduct on affected Wawa employees, like the McGlades.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

**COUNT III**
**NEGLIGENCE *PER SE***
**THE WAWA DEFENDANTS**

110.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

111.    Various statutes, laws and regulations define the nature and scope of appropriate conduct in relation to cybersecurity.  These statutes, laws and regulations are applicable to the Wawa Defendants and governed their conduct.

112.    By their acts and omissions set forth herein, the Wawa Defendants breached and violations these statutes, laws and regulations.

113.    As a direct and proximate result of such breaches and violations of statutes, laws and regulations, the Wawa Defendants caused harm to Plaintiffs and the Class as detailed herein.

114.    Plaintiffs and the Class have suffered, and will continue to suffer, harm due to the negligence per se of the Wawa Defendants.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION/FRAUD**
**THE WAWA DEFENDANTS**

115.    Plaintiffs hereby incorporate by reference the averments of the foregoing paragraphs as if fully set forth herein.

116.    By engaging in the acts and omissions alleged in this Complaint, the Wawa Defendants have made misrepresentations to and defrauded the Plaintiff s and the Class.

117.    The Wawa Defendants have made false statements and material misrepresentations to Plaintiffs and the Class relating to the receipt, storage, maintenance and privacy of their PII, as well as the time, place and manner of the unauthorized access to and theft of their PII.  Their communications also involved material omissions about the actual facts pertaining to the data breach which facts were necessary for Plaintiffs and the Class to take timely and appropriate steps to protect themselves from the theft of their PII.

118.    The Wawa Defendants intended that Plaintiffs and the Class would rely on their material misrepresentations and omissions to their detriment.  In particular, the Wawa Defendants repeatedly made misrepresentations about the security of the PII they obtained from Plaintiffs and the Class.  The Wawa Defendants also have made material misrepresentations and omissions to Plaintiffs and the Class respecting, *inter alia*, when they learned of the unauthorized access to the PII and what was accessed

119.    At least forty-four (44) States, the District of Columbia and Puerto Rico have enacted legislation requiring notification of security beaches involving personal information, including the following:

    a.   Alaska, 2008 H.B. 65;

    b.   Arizona, Ariz. Rev. Stat. § 44-7501 (2007 S.B. 1042, Chapter 23);

    c.   Arkansas, Ark. Code § 4-110-101 *et seq.*;

d.   California, Cal. Civ. Code §§ 56.06, 1785.11.2, 1797.29, 1798.29, 1798.81.5, 1798.82, 1798.84;

e.   Colorado, Colo. Rev. Stat. § 6-1-716;

f.   Connecticut, Conn. Gen Stat. § 36a-701(b);

g.   Delaware, Del. Ann. Code Title 6, §§ 12B-101 *et seq.*;

h.   Florida, Fla. Stat. § 817.5681;

i.   Georgia, Ga. Code §§ 10-1-910, -912;

j.   Hawaii, Haw. Rev. Stat. § 487N-2;

k.   Idaho, Idaho Code §§ 28-51-104 to 28-51-107;

l.   Illinois, 815 ILCS 530/1 et seq.;

m.   Indiana, Ind. Code §§ 24-4.9 et seq., 4-1-11 *et seq.*;

n.   Iowa, 2008 S.F. 2308;

o.   Kansas, Kan. Stat. 50-7a01;

p.   Louisiana, La. Rev. Stat. Ann. § 51:3071 *et seq.*;

q.   Maine, Me. Rev. Stat. Ann. tit. 10 §§ 1347 *et seq.*;

r.   Maryland, Md. Code, Com. Law § 14-3501 *et seq.*;

s.   Massachusetts, 2007 H.B. 4144, Chapter 82;

t.   Michigan, Mich. Comp. Laws § 445.61 *et seq.*;

u.   Minnesota, Minn. Stat. §§ 325E.61, 325E.64;

v.   Montana, Mont. Code § 30-14-1701 *et seq.*;

w.   Nebraska, Neb. Rev. Stat. §§ 87-801 - 87-807;

x.   Nevada, Nev. Rev. Stat. 603A.101 *et seq.*;

y.   New Hampshire, N.H. Rev. Stat. §§ 359-C:19 *et seq.*;

z.  New Jersey, N.J. Stat. 56:8-163;

aa. New York, N.Y. Gen. bus. Law § 899-aa;

bb. North Carolina, N.C. Gen. Stat § 75-65;

cc. North Dakota, N.D. Cent. Code § 51-30-01 *et seq.*;

dd. Ohio, Ohio Rev. Code §§ 1347.12, 1349.19, 1349.191, 1349.192;

ee. Oklahoma, Okla. Stat. § 74-3113.1 and 2008 H.B. 2245;

ff.  Oregon, 2007 S.B. 583, Chapter 759;

gg. Pennsylvania, 73 Pa. Stat. § 2303 (2005 S.B. 712, Act 94);

hh. Rhode Island, R.I. Gen. Laws § 11-49.2-1 *et seq.*;

ii.  South Carolina, 2008 S.B. 453, Act 190;

jj.  Tennessee, Tenn. Code § 47-18-2107;

kk. Texas, Tex. Bus. & Comm. Code § 48.001 *et seq.*;

ll.  Utah, Utah Code §§ 13-44-101, -102, -201, -202, -310;

mm.       Vermont, Vt. Stat. tit. 9 § 2430 *et seq.*

nn. Virginia, 2008 S.B. 307, chapter 566;

oo. Washington, Wash. Rev. Code § 19.255.010;

pp. West Virginia, 2008 S.B. 340, Chapter 37;

qq. Wisconsin, Wis. Stat. § 895.507;

rr.  Wyoming, Wyo. Stat. § 40-12-501 *et seq.*;

ss. District of Columbia, D.C. Code § 28- 3851 *et seq.*;

tt.  Puerto Rico, 2005 H.B. 1184, Law 111.

120.   By the acts and omissions set forth herein, the Wawa Defendants have violated these laws to the extent any of the current or former employees in the Wawa Employee Class reside in those states.

121.   As described in detail above, the Wawa Defendants failed to comply with these statutory requisites by, *inter alia*, failing to disclose in the most expedient time possible and without unreasonable delay the fact of the breach of security concerning the PII of Plaintiffs and the Class.

122.   It is believed and therefore averred that the legitimate needs of law enforcement did not prevent the Wawa Defendants from providing expedient notice to Plaintiffs and the Class.  Specifically, it is believed and therefore averred that a law enforcement agency did not determine that the notification will impede a criminal or civil investigation and did not make a request that the notification be delayed.

123.   The Wawa Defendants failed to provide reasonable security protection to the PII of Plaintiffs and the Class to prevent a breach of security of the system.

124.   Defendants acted willfully, knowingly and/or recklessly with respect to its acts and omissions above.

125.   Plaintiffs and the Class did in fact reasonably rely on the misrepresentations of the Wawa Defendants to their detriment. They suffered injury and damages, as more fully set forth herein, due to the delays in conveying the truth.

126.   In addition, the Wawa Defendants concealed and suppressed and/or omitted material facts as to their knowledge of the unauthorized access to the PII, and their subsequent actions ostensibly to protect Plaintiffs and the Class from the unlawful disclosure and use of their PII.

127.     As a direct and proximate result of the Wawa Defendants' misrepresentations, omissions, and concealment of the truth, Plaintiffs and the Class were unaware of the true facts surrounding the theft of their PII and were not able to take timely action to protect themselves from the harmful effects of the unauthorized disclosure and use of their PII.

128.     As a direct and proximate result of the Defendants' misrepresentations and omissions, and the concealment and suppression of material facts by Defendants, Plaintiffs and the Class have suffered and will continue to suffer damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

## COUNT V
## UNJUST ENRICHMENT
## ALL DEFENDANTS

129.     Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

130.     By engaging in the conduct described in this Complaint, the Defendants have knowingly obtained benefits from Plaintiffs and the Class, namely their labor and the profits therefrom (in the case of the Wawa Defendants), and actual monies and other benefits (in the case of all Defendants) under circumstances such that it would be inequitable and unjust for these Defendants to retain them.

131.     By engaging in the acts and failures to act described in this Complaint, the Wawa Defendants have been knowingly enriched by the savings in costs that should have been reasonably expended to protect the PII of the Plaintiffs and the Class. The Wawa Defendants knew or should have known that theft of employee PII could happen, yet they failed to take

reasonable steps to pay for the level of security required to have prevented the theft of PII of employees and customers.

132.   By engaging in the conduct described in this Complaint, the Doe Defendants have knowingly obtained benefits from Plaintiffs and the Class under circumstances such that it would be inequitable and unjust for these Defendants to retain them.  It is believed and therefore averred that the Doe Defendants have collected either goods or services and otherwise used the PII belonging to Plaintiffs and the Class for their benefit and to the detriment of Plaintiffs and the Class.

133.   Thus, Defendants will be unjustly enriched if they are permitted to retain the benefits derived from the theft of Plaintiffs' and the Class' PII.

134.   Plaintiffs and each member of the Class are therefore entitled to an award of compensatory damages in an amount to be determined at trial, or the imposition of a constructive trust upon the monies derived by the Defendants by means of the above-described actions.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

## COUNT VI
## CONSPIRACY/CONCERT OF ACTION
## ALL DEFENDANTS

135.   Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

136.   As set forth more fully above, beginning at least as early as November 2019, the exact date being unknown to Plaintiffs and the Class, and continuing thereafter until the present, the Wawa Defendants and their co-conspirators entered into an agreement and/or otherwise engaged in a continuing conspiracy to misrepresent and/or omit the truth about the data breach,

and to defraud the Plaintiffs and the Class by causing PII of Plaintiffs and the Class to be unlawfully accessed, downloaded and sold, and then hiding the true facts and delaying timely notification.

137.    Pursuant to the conspiracy alleged herein and in furtherance thereof, the Wawa Defendants and their co-conspirators engaged in a wide range of activities, the purpose and effect of which was to misrepresent and conceal the truth from the Plaintiffs and the Class, and to act or take substantial steps in furtherance of the conspiracy.  Those activities include the agreement to delay notification of the data breach to Plaintiffs and the Class and an agreement to refuse to disclose the full details surrounding the data breach.

138.    The Wawa Defendants performed the acts alleged herein in furtherance of the common plan or design for the conspiracy with knowledge of the injury and damage it would cause to Plaintiffs and the Class and with intent to cause such injuries or with reckless disregard for the consequences.

139.    As a direct and proximate result of the Wawa Defendants' conspiracy as alleged herein, Plaintiffs and the Class have been injured and damaged, and the Defendants are jointly and severally liable for such injuries and damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

## COUNT VII
## FAIR LABOR STANDARDS ACT: UNPAID OVERTIME WAGES
## THE WAWA CORPORATE DEFENDANTS

140.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

141.    At all relevant times, the Wawa Corporate Defendants have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

142.    At all relevant times, Defendants employed Mr. McGlade within the meaning of the FSLA.

143.    The Wawa Corporate Defendants have engaged in a widespread pattern and practice of violating the FSLA, as set forth in detail in Complaint filed in the matter of *Gervasio v. Wawa, Inc.* (D.N.J. No. 3:17-cv-002)("*Gervasio*") at Document 1, which Plaintiffs incorporate by reference herein.

144.    The Wawa Corporate Defendants have settled the *Gervasio* action, thereby conceding the merit of Mr. McGlade's claims for unpaid overtime wages while serving as a Wawa AGM.  As a result, Mr. McGlade is entitled to be paid.

145.    Alternatively, the Wawa Corporate Defendants should be stopped from arguing Mr. McGlade has no right to be paid for his unpaid overtime.

146.    Mr. McGlade consents in writing to be a party pursuant to this action, pursuant to 29 U.S.C. § 216(b).

147.    The overtime wages provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to the Wawa Corporate Defendants.

148.    At all relevant time and continuing to the present, Defendants have had a policy and practice of refusing to pay overtime compensation to its AGMs and similarly situated employees in comparable positions but holding different titles, for hours worked in excess of 40 hours per workweek.

149.    As a result of the Wawa Corporate Defendants' willful failure to compensate its

employees, including Mr. McGlade, at a rate not less than one and one-half times the regular rate

of pay for work performed in excess of 40 hours in a workweek, the Wawa Corporate

Defendants have violated, and continue to violate, the FSLA, 29 U.S.C. §§ 201, *et seq.*, including

29 U.S.C. §§ 207(a)(1) and 215(a).

150.    As a result of the Wawa Corporate Defendants' willful failure to record, report,

credit, and compensate its employees, including Mr. McGlade, the Wawa Corporate Defendants

failed to make, keep, and preserve records with respect to each of its employees sufficient to

determine the wages, hours, and other conditions and practices of employment in violations of

the FSLA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

151.    As a result of the Wawa Corporate Defendants' policy and practice of minimizing

labor costs by underfunding labor budgets for its stores, the Wawa Corporate Defendants knew

or recklessly disregarded the fact that Mr. McGlade and other AGMs were primarily performing

manual labor and non-exempt tasks.

152.    Due to the Wawa Corporate Defendants' failure to provide enough labor budget

funds, failure to take into account the impact of the underfunded labor budgets on the job duties

of McGlade and other AGMs, the Wawa Corporate Defendants' actual knowledge, through its

GMs and Area Managers that the primary duties of Mr. McGlade (while working as an AGM)

and other AGMs were manual labor and non-exempt tasks, the Wawa Corporate Defendants'

failure to perform a person-by-person analysis of Mr. McGlade's and other AGMs' job duties,

instituting a policy and practice that did not allow Mr. McGlade and other AGMs to record all

hours worked, and their failure to post or keep a notice explain minimum wage and overtime

wage requirements, the Wawa Corporate Defendants knew and/or showed reckless disregard for its conduct that was prohibited by the FSLA, 29 U.S.C. § 255(a).

153.    As a result of the Wawa Corporate Defendants' FSLA violations, Mr. McGlade, and other Wawa AGMs (too afraid to come forward to collect what is owed to them, due to the oppressive environment at Wawa that discourages Wawa employees from seeking the overtime wages to which they are entitled), are entitled to (a) recover from the Wawa Corporate Defendants their unpaid wages for all of the hours worked by them, as overtime compensation; (b) recover an additional, equal amount as liquidated damages for the Wawa Corporate Defendants' willful violations of the FSLA; and (c) recover their unreasonably delayed payment of wages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Mr. McGlade, on behalf of himself and other unpaid Wawa employees, respectfully seek the relief set forth below.

## COUNT VIII
## PENNSYLVANIA MINIMUM WAGE ACT: UNPAID OVERTIME WAGES
## THE WAWA CORPORATE DEFENDANTS

154.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

155.    The Wawa Corporate Defendants are employers covered by the overtime pay mandates of the Pennsylvania Minimum Wage Act ("PMWA"), and Mr. McGlade and other Pennsylvania-based Wawa employees who have served as AGMs are employees entitled to the PMWA's protections.

156.    The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  43 P.S. § 333.104(c).

157.    The Wawa Corporate Defendants violated the PWMA by failing to pay Mr. McGlade and other Pennsylvania-based Wawa employees the full, legally mandated overtime premium for all hours worked over 40 per week.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request the Court to enter the following relief:

a.      Certify this case as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and denominate Plaintiffs as adequate representatives for the Wawa Employee Class and his undersigned counsel as counsel for the Wawa Employee Class;

b.      Declare unlawful the acts and practices alleged herein, and enjoin the Defendants from committing the acts alleged herein.  Included in the injunction, the provision of credit monitoring services for Plaintiffs and the Class for at least two (2) years, the provision of bank monitoring for Plaintiffs the Class for at least two (2) years, the provision of credit restoration services for Plaintiffs and the Class for at least two (2) years, and the provision of identity theft insurance for Plaintiffs and the Class for at least two (2) years;

c.      Enter judgment against all Defendants for the violations alleged herein;

d.      Award the actual damages incurred by Plaintiffs and the members of the Class as a result of the wrongful acts complained of, along with pre-judgment and post-judgment interest at the maximum rate allowed by law;

e.      Award unpaid wages in excess of 40 hours in a workweek, at a rate of one and one-half times the regular rate of pay under the FSLA and PMWA using the following common methodology for calculating damages ((Annual Salary ÷ 52) ÷ 40) x Total Number of Overtime Hours Worked x 1.5;

e.      Award statutory damages set forth herein;

f.      Award of treble damages or multiple damages by operation of law;

g.      Award punitive damages;

h.      Award Plaintiffs the costs of this action, including reasonable attorney's fees, and, where applicable, expert fees; and

i.      Award such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiffs and the Class demand a trial by jury of all issues so triable in this cause.

Respectfully submitted,

Donald E. Haviland, Jr., Esquire (PA 66610)
*haviland@havilandhughes.com*
**Haviland Hughes**
201 South Maple Avenue
Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:    (215) 392-4400

*Attorneys for Plaintiffs,*
*Shawn and Karen McGlade,*
*and the Wawa Employee Class*

43